18822

Richard W. JOHNSON, Appellant, v. Barbara B. JOHNSON, Respondent.

(163 S. E. (2d) 229)

*Messrs. Abrams, Bowen & Townes,* of Greenville, *for Appellant,*

*Messrs. G. M. Ashmore* and *H. F. Partee,* of Greenville, *for Respondent,*

September 3, 1968.

LITTLEJOHN, Justice.

This action was commenced by Richard W. Johnson as plaintiff, hereinafter called the husband, against Barbara B.

Johnson as defendant, hereinafter called the wife, for a divorce on the ground of adultery. The complaint also asked for custody of the two boys of the parties, they being ages four and eight at the time the complaint was served on January 4, 1966.

The answer of the wife asked that the complaint be dismissed, and that a legal separation from bed and board be ordered, and that custody of the two boys be granted her, together with support money for them, and attorney's fees, be directed. The answer and counterclaim did not ask for alimony or support money for the wife herself.

The reply of the husband amounted to a general denial of the counterclaim and again prayed for the relief sought in the complaint.

The action was instituted in the Juvenile and Domestic Relations Court of Greenville County, which court has full jurisdiction to try issues and grant decrees in divorce and child custody litigation. That court held hearings on March 2, 1966 and on September 13, 1966, and thereafter entered its decree dated July 14, 1967, granting a divorce to the husband on the ground of adultery, and granting to the husband custody of the two boys. The court found factually that "the minor children of the parties and their welfare would be best served by placing them in the custody of the father, Richard W. Johnson." The court further held that the wife had failed to carry the burden of proof on her answer and counterclaim. Visitation rights were granted to the mother.

The wife appealed to the Court of Common Pleas for Greenville County, challenging the correctness of the Juvenile and Domestic Relations Court in granting the divorce to the husband on the ground of adultery, and in granting custody of the two boys to him.

The appeal was heard by the circuit judge on November 21, 1967 and resulted in his order dated December 18, 1967, affirming the trial court in granting the divorce on the

ground of adultery, but reversing the trial court insofar as it granted custody of the two boys to the father. The order of the circuit judge went further and decreed visitation rights for the father and directed that $150.00 per month be paid by him to the mother for the support of the two minor children.

The husband has appealed to this court from that part of the circuit court order which reversed the Juvenile and Domestic Relations Court and granted to the wife custody of the two boys. The wife has not appealed, and accordingly, the directive of the circuit court and of the juvenile and Domestic Relations Court granting a divorce on the ground of adultery is the law of the case. We therefore concern ourselves with only the custody issue in this appeals proceeding.

There are many exceptions interposed in the record, framing as set forth in appellant's brief, four basic questions; however, we think there is only one real question for this court to determine: Did the circuit court, sitting as an appeals court only, err in reversing the trial judge, thereby granting custody of the two boys to the wife and granting to her support money for them?

Since the issues before the circuit judge on appeal, and since the issues now before this court on appeal involve an evaluation of the evidence, it is necessary to summarize the part relevant to the custody issue.

In reciting the evidence and in evaluating the same we do so in the light of our holding in the case of *Porter v. Porter,* 246 S. C. 332, 143 S. E. (2d) 619, which case also involved the Juvenile and Domestic Relations Court of Greenville County as the trial court, and the Court of Common Pleas for Greenville County sitting as an appellate court. We held therein that the Court of Common Pleas had appellate jurisdiction only, was not the trier of the facts, and that authority to modify an order continued exclusively in the trial court. The rule set forth in that case

to the effect that "his [the trial judge] findings will not be disturbed unless it appears that such are without evidentiary support or against the clear preponderance of the evidence" is applicable in this case.

The husband and wife were married in 1954. They resided at the time of their separation in a middle-income residential area of Greenville without serious difficulties until about three or four years prior to the trial. Apparently about three or four years prior to their agreed separation in August 1965 the relationship became more and more strained.

The husband is a graduate of North Carolina State College and is an engineer with an admitted income of $850.00 gross per month. He has worked for several years as an engineer for the father of his wife, who owns and operates The Precision Machine Works in Greenville. The wife is college trained also, and is an accomplished musician and teacher of piano and organ.

She became acquainted with Frank Brasington, with whom she is charged with adultery, about three or four years prior to the trial when she taught one of his children piano at her home. The wife admits that her marital troubles got worse after she met him. He is forty-nine years of age, and has four children, two by his first wife, ages eighteen and twenty-three, and two by his second wife, ages fourteen and seventeen (these two live in Greenville). He is twice divorced and resides alone in an apartment in Greenville.

In April 1965 the wife accepted employment with Frank Brasington who operates the Case Piano Company. In her employment she taught piano and organ and performed secretarial work at the piano company store. It is evident from the testimony that between April and August the family relationship of the husband and the wife deteriorated such that on August 26, 1965 a separation agreement was entered into, under the terms of which the wife and children were to continue to live at the homeplace and receive $100.00 per month for the support of the children only. The husband

further agreed to pay medical bills and to provide the wife with the use of a car and to continue making payments on the home mortgage. It is of some significance that this agreement was made approximately one month after Brasington's divorce from this second wife was finalized. A portion of the separation agreement reads as follows:

"From and after the execution of this agreement the parties hereto shall have the privilege of having such friend or friends as he or she may desire without the right on the part of the other party to object thereto. However, the said Richard W. Johnson in the execution of this agreement does so with the reservation that he still loves the said Barbara B. Johnson.

\* \* \*

"It is understood and agreed that from and after the execution of this agreement that neither of the parties hereto shall in any way interfere with the business or social activities of the other party."

It is the testimony of the husband that he did not know at the time the agreement was made of any improper relationship between his wife and Brasington. He now asserts a change of conditions, and submits that the custody of the boys should be granted to him because of her conduct since the agreement was signed. Within less than a month after the agreement the husband had heard of objectionable associations between his wife and Brasington and approached him about the same, but such impropriety was denied.

Thereafter, the husband employed certain persons to observe his wife's conduct on occasions and by reason of that which they saw he commenced this action and charged the wife with adultery on December 18, 1965 with Frank Brasington. Inasmuch as the divorce aspect of this case was not appealed by the wife and is no longer in contest it is not necessary to review the evidence relative to the adulterous act. It is the law of the case.

It is academic that the interest of the children is the paramount issue. *Powell v. Powell,* 231 S. C. 283, 98 S. E. (2d) 764. We concentrate, therefore, on that evidence which bears on this point.

When a marriage comes to an unfortunate end, as here, the court must look to all of the evidence and to the totality of the circumstances of the parents in making a determination as to which parent can best provide for the welfare of the children. Each parent, by reason of the divorce, is thrown into a new sphere of living and must begin anew to establish a different home life and a new pattern of living. Each parent must plan a new future and cannot always at the time of the trial specify exactly where and under what circumstances the new mode of living will be carried on. The new home life will depend largely on which party is awarded custody. This being true, the trial judge understandably had to determine custody largely on a determination of character, fitness, attitude, and inclinations on the part of each parent. Material things are often secondary.

The fitness of the father is not contested. At the same time, there are several facts in the record which would appear to force the conclusion that this man is highly suitable to take custody of his two boys. It was his desire that his wife refrain from working and devote her time to the management of the home and the care of the children. He testified that he still loved his wife and it is inescapable that it was at his instigation that the following provision was included in the separation agreement: "However, the said Richard W. Johnson in the execution of this agreement does so with the reservation that he still loves Barbara B. Johnson.

At the time of the second hearing before the trial judge, which was more than eight months after he had formally charged his wife with adultery, he was continuing his employment with her father and the wife admitted at that time that her parents were still fond of her husband. Their kind

attitude toward him under the circumstances speaks a message.

The husband has complied with his agreement to provide a home and pay on the mortgage, and to pay $100.00 a month for the support of his children. He accepts his responsibility to support the children regardless of who has custody.

There was certain relevant testimony before the trial judge which he no doubt considered and which justified his findings and conclusions. The wife admitted that she had always wanted to get out of the house to work. She went to the Case Piano Company to give music lessons even though she admitted she could have given the same at home where she would have been with the boys. With the husband's admitted gross earnings of $850.00 per month, her working was not a necessity. Her working made it necessary to leave the children with a Negro maid and she often worked into the early evening. It is certainly inferable that it was at her instigation that the agreement included the provisions quoted above to the effect that the parties could have such friends as they desire. She took advantage of this provision readily by admittedly socializing with Brasington as early as September 17, 1965.

Both the wife and Brasington admitted at the last hearing, more than a year after the agreement, that they had been seeing each other regularly and frequently.

The trial judge found that the wife's association "with Frank Brasington has certainly been detrimental to the best interests of the minor children of the parties." Their association, admitted to be frequent and regular, included a trip to Columbia in September 1965 where both, and also the boys and a maid, spent the weekend at the same motor court. The occasion of the trip was to attend a football game at the University of South Carolina.

In June 1966 they carried the two boys, along with two children of Brasington, to Surfside Beach, where they stayed at a house rented by Brasington from Sunday until Tuesday.

On July 26, 1966 they took the two boys to Atlanta to a baseball game where all stayed at the same hotel. On two occasions Mrs. Johnson took the two boys on picnics with Brasington at his summer cottage at River Falls in Greenville County.

An adulterous wife, under our divorce statute (Sec. 20-113 of the Code), is denied alimony and the husband is no longer required to provide her with the home in which she lives. She is therefore in a position such that she must work for her own support and must leave the children in the custody of hired help and establish for herself a place of abode.

After the adultery action was commenced discretion dictated that she should for the sake of the children, if for no other reason, cease association with Brasington. She apparently felt no restraint. In spite of the August 1965 agreement she remained a married woman with obligations to her children, and even if one assumes that the husband, by reason of his agreement, had less than full right to complain of her associations, the facts remain: 1. that the agreement does not excuse adultery; 2. that the State has an interest in all marriage contracts and in the custody of the children; 3. that her conduct has been inconsistent with the best interest of the children; 4. no agreement can prejudice the rights of the children. Fully analyzed, such was the holding of the trial judge and we are in agreement.

The circuit judge, in ruling upon the appeal, properly applied the law of Porter, *supra*, as relates to the granting of the divorce, but he erred in his application of the rule as relates to the custody phase of the case. The circuit judge cites the case of *Langston v. Langston*, S. C., 157 S. E. (2d) 858, in substantiation of his ruling. The ruling made by this court in that case is not inconsistent with our ruling here. In the *Langston* case the trial judge awarded the children to the mother; in this case the trial judge awarded the children to the father; we think the evidence warranted the trial judge's action in each instance.

We are not unaware of the tender age doctrine under which custody of small children is often granted to the mother. The trial judge had the benefit of observing the witnesses and we cannot say that his findings and conclusions were against the clear preponderance of the evidence. The circuit court should have sustained the entire order of the Juvenile and Domestic Relations Court, and is therefore

Reversed.

Moss, C. J., and Lewis, J., concur.

Bussey and Brailsford, JJ., dissent.

Bussey, Justice (dissenting).

Upon the record before us, I am unable to agree with the majority view that the custody of the minor children in this case should be given to the appellant husband in accordance with the order of the Juvenile and Domestic Relations Court of Greenville County. However, as the custody of these children, now with the wife, should not be disturbed again during a school year, now about to commence, I shall not delay the filing of the majority opinion by taking the time to either fully review the evidence or set forth my reasons for dissent, which have been communicated to the other members of the court.

The husband and wife in this case have been separated now for over three years, during most of which custody of the children has been with the wife. The record, to my mind, gives rise to the inference that the husband is a jealous, suspicious, possessive type of individual. Shortly after the separation agreement, he commenced constant surveillance of his wife, personally, through semi-pro and amateur detectives, and apparently the children themselves, in an effort to obtain evidence of some wrongful conduct on the part of his wife. In the final analysis, the order of the trial court granting a divorce and taking custody of the children away from the wife rests on little more than a finding, on strongly conflicting evidence, that the wife on a single date committed

adultery, which finding of fact was based on the testimony of plaintiff's barber and the son of the barber, other detective efforts on the part of the husband having failed. The circuit court did not concur in such finding but, on the theory that there was some evidence to support it, did not reverse the decree of divorce.

The order of the trial court taking the custody of the children away from the wife was entered some eighteen months after her alleged wrongful conduct was brought to the attention of the court, and nearly one year after the final hearing of the matter, which is a strong indication that the trial court doubted the sufficiency of the evidence to support a divorce decree. Except for the one instance of adultery found by the trial court, other circumstances relied upon as tending to incriminate the wife are largely, if not fully, explained by uncontradicted evidence consistent with her innocence.

As pointed out in the order of the circuit court, any evidence or facts, in the record, concerning the true welfare of the children and the proper disposition of their custody seem to have been purely incidental to the main issue of divorce. The circuit judge concluded that the evidence in the record was totally insufficient to support the conclusion of the trial judge that the children should be taken away from the wife, and that in doing so, the trial court erroneously overlooked or ignored several pertinent legal principles.

While I fully agree with the foregoing conclusions of the circuit judge, it does not necessarily follow that this disposition of the custody of the children is correct. The record, to my mind, is sufficient to raise, but not answer, the question as to what is truly in the best interest of the children, whose ultimate welfare is always the primary concern in custody cases. It is my view that the order of the circuit court should be modified and the cause remanded to the trial court for the purpose of taking full testimony, addressed to what is in the true interest of the children, and awarding this custody in the light thereof and all pertinent principles of law,

some of which I think were clearly ignored by the trial court in its order.

BRAILSFORD, J., concurs.